# CIRCUIT COURT OF FAIRFAX COUNTY

Cristina Marie Wheaton

v.

Robert Anthony Wheaton

April 14, 1997

Case No. C146752

BY JUDGE LESLIE M. ALDEN

This matter came before me at the March 28, 1997, hearing on Defendant Robert Anthony Wheaton's Motion to Dismiss this Court's jurisdiction for determining custody of the Wheatons' minor children, as the Territory of Guam has already exercised jurisdiction over the matter.

There are three issues before the Court. The first issue is whether the Court has jurisdiction to determine custody. If so, the second question is whether 28 U.S.C. § 1738A (Parental Kidnaping Prevention Act) or the Uniform Child Custody Jurisdiction Act as enacted in the Virginia Code require the Court to abstain from exercising that jurisdiction and to defer to the custody proceedings pending in Guam. Finally, the Court will determine whether it must give full faith and credit to the custody order already entered by the Guam court. For reasons explained below, the Court finds that it does have jurisdiction to determine custody, it is not required to abstain from exercising said jurisdiction, and it is not obligated to give full faith and credit to the

Guam court's custody order.[1] Defendant's motion to dismiss is therefore denied.

*Facts*

For the purpose of this motion, the Court assumes the following facts. Defendant Robert Anthony Wheaton ("Father") and Plaintiff Cristina Marie Wheaton ("Mother") were married in Virginia in 1991. Two children were born of the marriage, Robert Anthony Wheaton, Jr., in 1992 and Bethany Marie Wheaton in 1995. The parties separated in August 1995. The children resided in Virginia from birth until Father took them to Guam[2] on June 9, 1996,[3] where the three of them have since resided with his parents ("Grandparents"), who are stationed there. On August 30, 1996, Mother, who continues to reside in Virginia, signed a writing purporting to give Grandparents guardianship of the children; however, she apparently revoked this consent on September 11, 1996. Grandparents filed a Petition for Guardianship at the beginning of October 1996, which the Superior Court of Guam granted, without a hearing, by Order of Guardianship dated October 30, 1996.[4] On November 8, 1996, Mother filed a Bill of Complaint for divorce and custody in this Court; Father filed for divorce in Guam the following month. Mother objected to the Guam Superior Court's assertion of subject matter jurisdiction over custody of the children at a January 1997 hearing, but the Guam court overruled her objection in its February 27, 1997, Order. Mother filed a Motion to Reconsider with the Guam court, which was to be heard on March 28, 1997, in conjunction with Mother's objection to the October 30 Order of Guardianship.[5] Meanwhile, Father filed the Motion to Dismiss in this Court; after hearing the matter on March 28, 1997, the Court took under advisement the defined issues.

---

[1] Although neither party has argued that Virginia is an inconvenient forum under Virginia Code Ann. § 20-130 (Michie 1950), the Court has considered the factors enumerated therein and is not convinced that Guam is better suited to make a custody determination.

[2] Mother agreed to let Father take the children to live in Arizona in May 1996, but they stayed there for less than one month before returning to Virginia.

[3] This date is disputed by the parties, but the Superior Court of Guam found that Father went to Guam on June 9th. Superior Court Order, February 26, 1997, pp. 2, 11, 12-13.

[4] According to the Guam court's February 26, 1997, Order finding jurisdiction over the custody matter, the entry of the Order for Guardianship is the first proceeding in the matter of custody.

[5] The results of the March 28th hearing in Guam are unknown.

## I. *The Court's Jurisdiction to Determine Custody*

Section 20-126 of the Virginia Code sets out the grounds for a Virginia court to assert jurisdiction over a child custody matter. Jurisdiction is conferred on a Virginia court if:

> [t]his Commonwealth ... had been the child's *home state* within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth ....

Va. Code Ann. § 20-126(A)(1) (Michie 1950) (emphasis added). Both the Virginia Code and the U. S. Code define "home state" as:

> the state in which the child immediately preceding the time involved lived with his parents, a parent, a person acting as parent, for at least six consecutive months ... Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

Va. Code Ann. § 20-125(5); 28 U.S.C. § 1738A(b)(4).

At the earliest, the children left Virginia for Guam on June 9, 1996. According to the Guam court, the custody proceeding commenced on October 30, 1996, when the Guam court issued its Order of Guardianship. Guam Super. Ct. Ord., pp. 4, 11, 22-23. The instant proceeding commenced in this Court on November 8, 1996, when Mother filed the Bill of Complaint. Regardless of which of the two dates is deemed the date of commencement of the custody proceeding, Virginia was the home state of the children within six months of both October 30 and November 8, 1996. As such, the Virginia Court may exercise jurisdiction over this custody matter.

## II. *The Court's Obligation to Stay Custody Proceedings in This Court Pending the Outcome in Guam*

The Court must consider both the federal Parental Kidnaping Prevention Act (PKPA) and the Uniform Child Custody Jurisdiction Act (UCCJA) enacted in the Virginia Code in determining whether it should stay custody proceedings here and defer to the proceedings pending in Guam. Both statutes are jurisdictional in nature and are applicable where the same action is filed in two different states. *See Lutes v. Alexander*, 14 Va. App. 1075, 1085 (1992).

Because actions have been filed in two different jurisdictions involving the Wheaton children, the PKPA and the UCCJA are applicable in this matter.

## A. *Parental Kidnaping Prevention Act*

Essentially, the PKPA prohibits a court of one state from exercising jurisdiction in a custody determination filed during the pendency of such a proceeding in a different state's court, as long as the other state's court "is exercising jurisdiction *consistently with the provisions of this section* to make a custody determination." 28 U.S.C. § 1738A(g) (emphasis added). In order to exercise jurisdiction consistently with the PKPA, a court must sit in the home state of the children or have been the home state within six months of the commencement of the proceeding. 28 U.S.C. § 1738A(c)(2)(A). Here, the Guam court's exercise of jurisdiction in the custody matter was *not* "consistent" with § 1738A because Guam was not the "home state of the child on the date of the commencement of the proceeding." As Guam was not the home state of the children when the proceeding commenced there, and as Virginia was the home state both at that time and when Mother filed her action here, this Court need not stay custody proceedings pending the outcome of the Guam proceedings. § 1738A(g).

## B. *Virginia Code, UCCJA*

Like the PKPA, the UCCJA as adopted by Virginia prohibits the Court from asserting jurisdiction over a custody determination if the matter is already "pending in a court of another state exercising jurisdiction *substantially in conformity with*" the UCCJA. Va. Code Ann. § 20-129(A) (Michie 1950) (emphasis added).

Under the UCCJA[6], a court has jurisdiction over a custody determination if it sits in the "home state" of the child when the proceeding begins. § 20-126(A)(1). As explained above, Virginia, not Guam, was the home state when the proceedings began. Although the Guam court's exercise of jurisdiction in the custody matter may have been in compliance with its own law, it was not "substantially in conformity" with the UCCJA. Because the Guam court's exercise of jurisdiction did not conform to the UCCJA as adopted by Virginia, this Court is not bound to refrain from exercising jurisdiction over the matter in accordance with the UCCJA.

---

[6] Guam is not a signatory to the UCCJA.

Even if the Guam court's exercise of jurisdiction did conform with the UCCJA, this Court need not decline to exercise jurisdiction over the Wheaton children. In *Lyons v. Lyons*, a companion case to *Middleton v. Middleton*, 227 Va. 82 (1984), the Supreme Court of Virginia addressed a similar set of circumstances. There, Ms. Lyons covertly took the children to England without permission and obtained an *ex parte* order of wardship in England; the mother then claimed that, under § 20-129, the Fairfax County Circuit Court could not assert jurisdiction over the children because of proceedings already pending abroad. 227 Va. 96-99.

The Supreme Court of Virginia conceded that, as a technicality, there was " 'a proceeding concerning the custody of the child ... pending' in England and England was 'exercising jurisdiction substantially in conformity with' the UCCJA." *Id.* at 99 (quoting § 20-129). However, the pending proceeding alone did not "mandate a wooden application of § 20-129(A) when foreign jurisdiction [was] obtained by one parent spiriting the child away from its domicile." 227 Va. at 99. The court was unwilling to set a precedent which would reward a "devious" parent who won the "race to the courthouse." *Id.* According to the court, such a ruling would undermine two bases of the UCCJA: "to deter unilateral removal of children to obtain foreign custody awards and to assure that litigation over the child's custody occurs in the forum where the child and his family have the closest connection." *Id.*

The facts assumed here are similar to those in *Lyons*. According to Mother, Father took the children from their home without her permission and obtained an *ex parte* Order of Guardianship. If the Order of Guardianship is indeed the first action in the custody matter, then Father arguably won the race to the courthouse. Under these circumstances, a ruling that § 20-129 precludes this Court from exercising its jurisdiction would be contrary to the rationale in *Lyons*, wherein the court gave considerable weight to the policies underlying of the UCCJA.

### III. *The Court's Obligation to Give Full Faith and Credit to the Guam Court's Custody Order*

Just as the Court must observe both the Parental Kidnaping Prevention Act and the Virginia Code in ascertaining whether it should stay the custody proceeding here, the Court also is subject to both sets of law in determining whether it must give full faith and credit to the custody order rendered by the Guam court.

## A. *PKPA*

One of the objectives of the PKPA is to deter a parent from removing a child, without the other parent's permission, to seek a more sympathetic judicial forum. In addition, the law intends to prevent duplicative or inconsistent custody proceedings in different jurisdictions. *See* Pub. L. 96-611, § 7(c)(6). Section 1738A(a) of the PKPA states:

> [t]he appropriate authorities of every State shall enforce according to its terms and shall not modify ... any child custody determination made consistently with the provisions of this section by a court of another State.

Under this provision, this Court would therefore be bound to give full faith and credit to the Guam Court's custody order had that order been made "consistently with the provisions" of the PKPA. However, as stated above, the Guam court did not act consistently with the provisions of the PKPA because it rendered an Order of Guardianship of the children even though it was not the home state at a time when Virginia was. Thus, under § 1738A(a), the Court need not enforce the order and may modify that order.

## B. *Virginia Code*

Section 20-136 of the UCCJA as adopted by Virginia requires courts in the Commonwealth to enforce custody decrees rendered by a court of another state as long as the foreign court "has assumed jurisdiction under statutory provisions substantially in accordance with this chapter." In order for a court to assume jurisdiction in a custody matter "substantially in accordance" with the UCCJA, that court must be sitting in the child's home state at the time of the commencement of the proceeding. *See* §§ 20-126(A)(1), 20-125(5). As explained above, Guam was not the home state of these children when the proceeding began because the children had not been present in Guam for six months at that time. Thus, the Court is not obligated to enforce the Guam court's Order of Guardianship.

Regarding modification (rather than enforcement) of a foreign court's custody order, the UCCJA prohibits a Virginia court from altering such a custody decree "unless (1) it appears to the court of this Commonwealth that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter ... and

(2) the court of this Commonwealth has jurisdiction." Va. Code Ann. § 20-137(A).

The first prong of § 20-137(A) is satisfied; as explained above, the Guam court does not have jurisdiction substantially in accordance with the UCCJA because it was not the children's home state when the proceeding began. *See* §§ 20-126(A)(1), 20-125(5). Because Virginia was the home state when the matter began, which, according to § 20-126(A)(1), is the basis for jurisdiction over the proceeding, § 20-126(A)(1), the second prong is also satisfied. As a result, the Court may modify or replace the Guam court's custody order should the Court decide that such action is appropriate or necessary.